## BENTLEY & COMPANY v. CRENSHAW.

SIMMONS, J.—The judge did not abuse his discretion in refusing the injunction prayed for in this case.                    *Judgment affirmed.*

April 23, 1890.

Petition for injunction and *mandamus*. Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1890.

J. M. Bentley & Co., on February 26, 1890, presented their petition against R. B. Crenshaw, constable of the 722d district G. M. of Fulton county. The case made by them was, in brief, as follows: On July 20, 1889, the Baxter Stove & Manufacturing Company brought two suits against petitioners in the justice court of the district above named, upon two drafts, one for $51.90, dated June 28, 1888, at four months after date, drawn by the Baxter company upon petitioners, accepted by them, and endorsed by the Baxter company, and also by the American National Bank of Birmingham, Alabama, for collection; the other for $56.56, dated August 12, 1888, at four months after date, drawn by the Baxter company upon petitioners, accepted by them, and endorsed by the Baxter company, and also by the Birmingham Trust & Savings Company, for collection. These suits were defended on the grounds that the drafts were given for stoves, six or seven of which when delivered were broken and of no value, making a damage of $53 to petitioners; and that upon such delivery they wrote to the Baxter company, telling them the condition of the stoves and asking what to do about it, but received no reply to this nor to a subsequent letter. Upon the rendition of judgments, petitioners appealed the cases to a jury in the justice court on August 17, 1889. On November 16, 1889, the cases came on to be tried, and counsel for both sides agreed that they be tried together before the same jury, and that the jury

render a separate verdict in each case. The trial took place, but the jury returned but one verdict, which was "for the plaintiff the amount sued for and costs of suit," and was not written upon the papers of either case but upon a separate piece of paper, and did not specify in which case it was rendered. It was written for the jury by the justice, who went into the jury-room where they were considering the cases. Finally it was returned into court, and when the justice started to enter up two judgments thereon, counsel for petitioners objected on the ground that there was no verdict in either of the cases. The justice did, however, enter up judgments in each, and on January 27, 1890, issued two executions, one for $51.90 principal and $4.15 interest to date of judgment at eight per cent. per annum, and all further interest at the same rate, with costs; and the other in like manner, bearing the same rate of interest. On February 5th, these executions were levied by Crenshaw, the constable, upon a mule, a pony and a yoke of oxen, as the property of petitioners, who thereupon, on February 12th, tendered to him their two affidavits of illegality on the following grounds : (1) The executions were issued without any verdict or judgment having been obtained from which to issue them. (2) It appears from the record that the suits were brought in the name of the plaintiff on an acceptance drawn by it on defendants, endorsed by plaintiff and received by the banks, in whom the title was vested; and the banks then endorsed the acceptance to the Atlanta National Bank for collection. It therefore appears that the banks in Birmingham held the legal title to the acceptances at the time the suits were brought and still hold it, and that plaintiff had no interest in it. (3) The acceptances specify no rate of interest, but the executions issued for eight per cent. interest, which is contrary to law and does not follow the

pleadings. , These illegalities are now pending in the
justice's court, and they stand for trial on the third
Saturday in March.    After they were accepted and
filed with the justice, petitioners tendered to Crenshaw
at various times prior to and on February 24th, their
two forthcoming bonds, each in the sum of $240, with
T. C. Williams as security; but the constable refused
to accept them and deliver to petitioners the property
levied on.    Williams is amply solvent, and was so
found upon investigation made by the constable him-
self; but although the bonds have been repeatedly
tendered to him, he has as often rejected them, saying
that the security is not good; and at the instance of the
attorneys for the Baxter company, he has served peti-
tioners with a notice of an order passed by the justice
on February 22, for the sale of the property levied on,
after advertisement for three days.    It is generally
known in the district that the executions are void for
want of a verdict on which to base them; and if the
property be so sold, it will be at a sacrifice and to the
damage of petitioners.    The constable is insolvent, and
so are the securities on his official bond; and the Bax-
ter company resides in Alabama.    The constable has no
legal excuse for not accepting the forthcoming bonds but
still refuses to do so, although he has admitted to peti-
tioners' counsel that he had searched the county records,
and that though he had found nothing against Wil-
liams, he found that he gave in taxes to the amount of
$2,300.    He refused to state any reason why Williams
was not good security, saying he would tell nothing
until forced to do it and would go to jail before he
would accept Williams as security.    In fact, one of
petitioners gives in for taxation more than $6,000 worth
of property.    They pray for injunction restraining the
sale of the property, and for an order requiring Cren-
shaw to show cause why he should not accept the bonds,

and that *mandamus* be granted requiring him to do so and to deliver the property to the petitioners.

In response, Crenshaw made the following showing: When the two cases were called to be tried by the jury in the justice's court, the justice asked if they should be tried separately or together.   Counsel for petitioners, the Bentleys, stated that they might be tried together, and this was done; but there was no agreement or mention as to separate verdicts; the cases were substantially the same.   When the justice read the verdict, counsel for petitioners asked to see it, and then objected to it as illegal because it did not say in what case it was given.   Counsel for the Baxter company said it could be easily amended; and to this petitioners' counsel objected, saying it was too late.   Williams is not a good and solvent security; all his visible assets consist of certain farm land worth not more than $750. Crenshaw would rather be sued for not taking him as a bondsman than for taking him; the securities on Crenshaw's official bond and other people so advise. Williams has various incumbrances in the way of mortgages, etc. outstanding.   Crenshaw denies that he admitted that Williams was solvent or that he returned property for taxation, as stated in the testimony of petitioners.   They were served with a notice to appear and show cause against the passage of the order for sale of the property levied on, but made no opposition to it. The property is live-stock and expensive to keep, and Crenshaw, in order to relieve himself of responsibility on that account, applied for the order of sale himself. The property would have brought the average price obtained at any sale under legal process.   The securities on Crenshaw's official bond are not insolvent, but are worth over $5,000.   On February 14, 1890, one of petitioners made affidavit that, owing to the poverty of the firm, they were unable to pay the costs and give

security in carrying these two cases to the superior court by *certiorari.*

The prayer for injunction was denied, and the petitioners took exceptions.

W. J. & J. R. ALBERT, for plaintiffs.

MAYSON & HILL, for defendant.